**ORIGINAL**

# In the United States Court of Federal Claims

No. 17-65C
(Filed February 28, 2018)
NOT FOR PUBLICATION

**FILED**
**FEB 28 2018**
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
                                 *
AGUSTIN SANTOS-PINEDA,           *
                                 *
                                 *
         Plaintiff,              *
                                 *
     v.                          *
                                 *
THE UNITED STATES,               *
                                 *
         Defendant.              *
                                 *
* * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff, Agustin Santos-Pineda, has filed an action in this Court *pro se*, seeking either compensation or equitable relief regarding his personal property that the Federal Bureau of Investigation (FBI) allegedly possesses. He maintains that, after a California state court judge ordered the return of items seized during a state criminal investigation, these items were transferred to the custody of the FBI in violation of his constitutionally protected due process rights. *See generally* Compl., ECF No. 1. Plaintiff also complains that a federal district court ignored the state court order that his property was to be returned, and requests either $200,000 in damages or an order that the United States Court of Appeals for the Ninth Circuit revisit its decision to affirm the district court's decision. Compl. at 12.[1]

The government has moved for dismissal under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), arguing that our court lacks jurisdiction to review the decisions of district courts, and that Mr. Santos-Pineda

---

[1] The reference is to numbered page 12 of the complaint, which is actually the eleventh page---it seems numbered page 8 should have been the sixth page sequentially, and no page 6 was submitted with the complaint.

7016 3010 0000 4308 4225

has failed to state a claim for just compensation under the Takings Clause of the U.S. Constitution. Def.'s Mot. at 4–5, ECF No. 5. For the reasons explained below, the government's motion to dismiss this case is GRANTED.

## I. BACKGROUND

As is often the case when parties represent themselves before our court, the complaint filed by Mr. Santos-Pineda is lacking in details, including an exhibit that is referenced but not attached. *See* Compl. at 2, 8 (citing state court order, intended as Ex. A). Some of these details have been supplied in plaintiff's opposition to the government's motion, which contains the omitted exhibit and two others. *See* Pl.'s Demur to Def.'s Mot. to Dismiss (Pl.'s Opp'n) at Exs. A–C, ECF No. 7. After plaintiff pled guilty to a misdemeanor and served a period of community service, his state criminal case was dismissed and on October 7, 2008, a California Superior Court judge ordered the Los Angeles County District Attorney's Office to return a list of seized items to him. *Id.* at Exs. B & C. Before these items were returned, however, on October 30, 2008, a grand jury subpoena was issued by the U.S. District Court for the Central District of California, presumably requesting them. *See id.* at Ex. A.[2]

The gravamen of Mr. Santos-Pineda's complaint is that once the state court ordered the property to be returned to him, it was improper for federal authorities to have obtained the items from state law-enforcement officials. He identifies the FBI agent whose name appears on the subpoena, Charles Gravis, *see id.*, as the federal official responsible, and alleges that the property was taken by Mr. Gravis "[o]n or about September 21, 2009." Compl. at 1–3.[3] Plaintiff contends that he was never charged with a federal violation, *id.* at 5, 8, and that he challenged the district court's jurisdiction over the property via petition, but the district court ignored his argument and abused its discretion, *id.* at 7, 10–11.

Looking to the district court action of which plaintiff complains, the Court notes that on August 23, 2010, Mr. Santos-Pineda and Gloria Santos filed a petition

---

[2] The attachment which apparently described the documents or objects subpoenaed was not included in Mr. Santos-Pineda's exhibit.

[3] Although this allegation would seem to suggest that the six-year limitations period for bringing such claims in our court had expired prior to the filing of the lawsuit, *see* 28 U.S.C. § 2501, plaintiff also cryptically alleges that he was "denied relief" by the government "[o]n or about" February 20, 2016, when he "filed 'Notice of Intent' to file suit." Compl. at 2. As the government has not challenged the jurisdictional facts relating to the timeliness of this lawsuit, the Court will not address the matter here.

seeking the return of their personal property, naming as respondents the Assistant U.S. Attorney who applied for the grand jury subpoena, Mr. Gravis, the Los Angeles County Deputy District Attorney, and a county investigator. *Santos-Pineda v. Axel*, No. 10-6285, 2011 WL 13103995, at *1 (C.D. Cal. July 26, 2011) (hereinafter *Santos-Pineda I*).[4] The district court order recounts that Mr. Santos-Pineda, Ms. Santos, and a third individual named Raul Ernesto Alonso-Prieto resided at the same address---one of two premises which were searched under a state warrant issued in the course of an investigation into an alleged conspiracy to extort money from a business. *Id.* Although the state criminal case against plaintiff was dismissed following his performance of community service, the federal prosecution of Mr. Alonso-Prieto had not been completed when plaintiff and Ms. Santos petitioned for return of their property, as Mr. Alonso-Prieto had appealed the sentence which followed his guilty plea. *Id.* at *2, *7.

The State of California first took possession of the property at issue as part of its investigation of Ms. Santos and others. *Id.* at *1. At some point, the FBI became involved, because of an investigation of Mr. Alonso-Prieto. *Id.* It was during the course of this investigation, which resulted in a subsequent federal indictment of Mr. Alonso-Prieto, that the property was transferred from California's possession to the custody of the FBI. *Id.* at *2.

Mister Santos-Pineda sought the return of his property by filing a motion under Federal Rule of Criminal Procedure 41(g) with the United States District Court for the Central District of California. *Id.* at *1–3.[5] Per Rule 41(g), a person who was deprived of property as a result of a criminal investigation or proceeding may move the district court to order its return. FED. R. CRIM. P. 41(g). When a former criminal defendant who has pleaded guilty and been sentenced brings the motion, he is presumed entitled to have his property returned. *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). But simply because a former

---

[4] The district court order may be considered in this proceeding, not only as integral to plaintiff's complaint, but also because it is a matter of public record. *See Sebastain v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

[5] Despite his filing of the petition with the district court, Mr. Santos-Pineda curiously asserts that the California courts had exclusive jurisdiction over the property at issue. Pl.'s Opp'n at 2. The property, however, is currently in the possession of the FBI---as a result of the investigation and prosecution of Mr. Alonso-Prieto. *Santos-Pineda I*, 2011 WL 13103995, at *2–3. To the extent that the property may have been illegally transferred from the possession of the state to the FBI, the proper venue for airing such a claim would have been the federal district court. *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1334 (Fed. Cir. 2006).

defendant has served his time does not mean that he may automatically retake possession of the property. By its own terms, Rule 41(g) provides that the court "may impose reasonable conditions to protect access to the property and its use in later proceedings." FED. R. CRIM. P. 41(g).

In regard to the items requested by Mr. Santos-Pineda, the district court found that they fell in a variety of categories. First, it concluded that several items had already been returned to him. *Santos-Pineda I*, 2011 WL 13103995, at *4. It then identified items that the government was willing to give back, and ordered those to be returned. *Id.* at *5. It is not clear from the complaint and plaintiff's other papers whether Mr. Santos-Pineda actually sought to reclaim these items after the district court issued its order, as he fails to specifically identify the individual items for which he seeks relief.

As for other items, the district court refused to order the return of property that it found never belonged to Mr. Santos-Pineda in the first place. *See id.* ("In order for an owner of property to invoke Rule 41(g), he must show that he had a possessory interest in the property seized by the government." (quoting *United States v. Howell*, 425 F.3d 971, 972–74 (11th Cir. 2005)). Further, per Rule 41(g), the district court refused to mandate the return of items that were serving as evidence in the case against Mr. Alonso-Prieto. *See id.* at *7 ("Given the relevance of these items to Alonso-Prieto's case, the government has a legitimate need to retain possession of the items during the pendency of his appeal." (footnote omitted)).

Finally, the district court dealt with items that were potentially contraband and items whose ownership or relevance to Mr. Alonso-Prieto's prosecution were unclear. *Id.* at *7–9. Here, the district court first noted that no right exists to possess contraband items---let alone have them returned after seizure. *Id.* at *7 (citing *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993)). Thus, the district court found reasonable the government's offer to return electronics to Mr. Santos-Pineda, provided that the FBI first scan and delete files that could potentially be used for future criminal activity. *Id.* at *8. Indeed, the district court ordered that the parties meet and confer about which files were potentially contraband. *Id.* Likewise, the district court ordered that the parties meet and confer about items whose ownership, illegality, or relevance to Mr. Alonso-Prieto's case was unclear. *Id.* at *9. The filings in our case do not reveal whether Mr. Santos-Pineda ever took advantage of these opportunities provided by the district court.

Dissatisfied with his lack of a total victory, Mr. Santos-Pineda appealed to the Ninth Circuit—which affirmed the district court's findings and order. *Santos-Pineda v. Axel*, 621 F. App'x 407 (9th Cir. 2015) (hereinafter *Santos-Pineda II*). Now, Mr. Santos-Pineda asks this Court to undertake a review of the district court's and the Ninth Circuit's decisions. The government has moved for the dismissal of this case, under RCFC 12(b)(1), for lack of subject-matter jurisdiction. It notes that

our court is not empowered to review the decisions of federal district or circuit courts, Def.'s Mot. at 4–5 & n.4 (citing *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)), and argues that takings claims based on the seizure of property by law enforcement officials are not within our court's jurisdiction, *id.* at 4 (citing *Kam-Almaz v. United States*, 682 F.3d 1364, 1371 (Fed. Cir. 2012); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006)).[6] Plaintiff responds that because his arrest and the initial seizure of the property was by state and not federal authorities, and because he was not himself charged with any federal violations, he believes the district court never had "jurisdiction" over the seized items. Pl.'s Opp'n at 2–4. He argues that once the state court ordered the state law-enforcement officials to return his items, they could not have been obtained by the FBI from those state officials. *Id.* He also claims that the state investigator who allegedly transferred the items to federal custody acted unlawfully, as the Assistant District Attorney signed off on the state court order that the items be returned. Pl.'s Response and Objections at 6–7 (Pl.'s Sur-Reply), ECF No. 9; Pl.'s Opp'n at 2. After considering the arguments of the parties, for the reasons explained below, the Court concludes that it cannot indulge Mr. Santos-Pineda's prayer for relief.

## II. DISCUSSION

### A. Legal Standards

This Court must dismiss claims that do not fall within its subject-matter jurisdiction. *See* RCFC 12(b)(1). "When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party." *Stanwyck v. United States*, 127 Fed. Cl. 308, 311–12 (2016) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). It is incumbent on the plaintiff to properly invoke the court's jurisdiction by establishing either a breach of contract by the federal government or identifying "a money-mandating law which was

---

[6] Concerning the latter point, the Court notes that the authorities relied upon by the government hold that the defect in such cases is the failure to state a claim upon which relief can be granted, not a lack of jurisdiction. *See Kam-Almaz*, 682 F.3d at 1371; *Acadia Tech.*, 458 F.3d at 1334–35. Accordingly, the Court will treat the government's motion in that regard as having been brought under RCFC 12(b)(6), as it is not the label placed on the motion but its substance that matters. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253–54 (2010) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 359, 381–84 (1959)); *Chisolm v. United States*, 82 Fed. Cl. 185, 194 n.12 (2008) (citing *Borough of Alpine v. United States*, 923 F.2d 170, 171–72 & n.1 (Fed. Cir. 1991); *Bolduc v. United States*, 72 Fed. Cl. 187, 189–92 (2006)).

allegedly violated by the federal government." *Id.* at 312 (citing *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983)). A plaintiff's *pro se* status does not relieve him of the obligation to establish jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (explaining the plaintiff's responsibility for showing that the claim falls within the court's jurisdiction); *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) (noting that a plaintiff's status does not excuse defects in the complaint); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that the burden of proof for establishing jurisdiction is by a preponderance of the evidence).

The Court considers motions for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When determining whether to grant an RCFC 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil. Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Although this Court accords a *pro se* plaintiff leniency in presenting his case, the plaintiff's "*pro se* status does not render him immune from the requirement that he plead facts upon which a valid claim can rest." *Paalan v. United States*, 57 Fed. Cl. 15, 16 (2003); *see also Hains v. Kerner*, 404 U.S. 519, 520–21 (1972).

## B. Analysis

The claim brought by Mr. Santos-Pineda seems to be that once a state court judge ordered state law enforcement officials to return items of personal property to him, those officials had no right to transfer those items to the FBI pursuant to a federal subpoena. *See* Compl. at 2, 7–8; Pl.'s Opp'n at 3–4. As our court has no jurisdiction over the actions of state and local officials, *see, e.g., United States v. Sherwood*, 312 U.S. 584, 588 (1941); *Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014); *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1308 (Fed. Cir. 2007); *Vlahakis v. United States*, 215 Ct. Cl. 1018 (1978); *Anderson v. United States*, 117 Fed. Cl. 330, 331 (2014); *see also* 28 U.S.C. § 1491 (conferring jurisdiction over certain "claim[s] against the United States"), plaintiff accordingly focuses his attention on two sets of federal actors---the FBI, which received the items, and the

federal courts which, he maintains, ignored his argument that the state court order placed the items beyond federal jurisdiction. *See* Compl. at 1–2, 8–11.

Plaintiff cites two constitutional provisions that he contends were violated: the Due Process Clause of the Fifth Amendment, which he misidentifies as the Fourth Amendment, *see* Compl. at 2, 9; and section 1, clause 2 of the Fourteenth Amendment, *see* Compl. at 2, 9–10, which on its face does not apply to the federal government, *see also S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987). Neither Due Process Clause mandates the payment of money for its violation, and to the extent plaintiff is raising due process claims, these must be dismissed as beyond our court's jurisdiction. *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).[7] Plaintiff does, however, request "just compensation" for property that was "[t]aken" by the United States, Compl. at 1, and in light of his *pro se* status, the Court will treat his complaint as resting on the Takings Clause of the Fifth Amendment, the violation of which is most definitely within our jurisdiction. *See, e.g., Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012).

Generally speaking, the Court of Federal Claims has no jurisdiction to review the decisions of other federal courts. *See Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994). In other words, this Court cannot provide a venue for review of another federal court in a manner akin to an appellate court. To the extent that Mr. Santos-Pineda asks this Court to review the correctness of the district court's or the Ninth Circuit's decisions, this Court is barred from doing so. Even assuming that the district court erred in failing to order that the property be returned to him, the proper venue of review was the Ninth Circuit---in which Mr. Santos-Pineda exercised his right of appellate review, but lost. *Santos-Pineda II*, 621 F. App'x at 407. If he was dissatisfied with the Ninth Circuit decision, his recourse was to petition the Supreme Court for a writ of *certiorari*, *see* 28 U.S.C. § 1254, and not to file a complaint in our court. To the extent Mr. Santos-Pineda's case is a challenge to the decisions of the district court or Ninth Circuit, it must be dismissed for lack of jurisdiction.[8]

---

[7] The only circumstance in which we can entertain the claimed violation of the Due Process Clause of the Fifth Amendment is when this allegedly resulted in an illegal exaction. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996); *Coleman v. United States*, No. 13-431C, 2014 WL 949984, at *3 (Fed. Cl. Mar. 7, 2014). This is not such a case.

[8] The Court recognizes that, theoretically, the decision of a federal court could result in an unconstitutional taking of private property. *Cf. Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162–64 (1980) (finding a taking when the Florida Supreme Court---contrary to established practice---interpreted a statute

This leaves the claim that the FBI has taken his property without payment of just compensation. The problem with this claim, however, is that the Federal Circuit has repeatedly and clearly held that the seizure of property by federal law enforcement officials does not give rise to a claim for relief in our court under the Takings Clause. *See Kam-Almaz*, 682 F.3d at 1371; *Acadia Tech.*, 458 F.3d at 1331–32. If the seizure was alleged to have violated due process or been otherwise improper or unauthorized, our court lacks jurisdiction over the subject matter. *Kam-Almaz*, 682 F.3d at 1371; *Acadia Tech.*, 458 F.3d at 1331; *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997). Such challenges belong in a district court. *See Acadia*, 458 F.3d at 1334.

On the other hand, if the property was lawfully seized, a claim for just compensation under the Takings Clause may not rest upon it, "even if the property is seized as evidence in a criminal investigation." *Id.* at 1331. As the Federal Circuit has explained, "Once the government has lawfully seized property to be used as evidence in a criminal prosecution, it has wide latitude to retain it so long as the investigation continues, regardless of the effect on that property." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008). In this regard, to the extent that the district court determined back in 2011 that certain items could not be returned at that time due to the pendency of criminal proceedings involving Mr. Alonso-Prieto, *see Santos-Pineda I*, 2011 WL 13103995, at *7, if those proceedings have terminated, plaintiff might be able to file another motion in the district court seeking their return, under Federal Rule of Criminal Procedure 41(g).[9] But even if everything that Mr. Santos-Pineda has alleged in his complaint is taken as true, his claims either fall outside our jurisdiction or fail to state a claim upon which relief can be granted. The government's motion to dismiss this case is therefore **GRANTED**.

---

to mean that the interest accrued on money deposited by parties in a state court's account during the pendency of litigation belonged to the state). This would require an argument, not made here, that a court had "declare[d] that what was once an established right of private property no longer exists." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010) (plurality opinion). Depending on the circumstances, the aggrieved party might be limited to appellate review. *Cf. id.* at 727–28 (discussing the application of *res judicata* in the context of alleged takings by state courts).

[9] The determinations that certain of the items were contraband or did not belong to plaintiff likely could not be revisited, due to the doctrine of *res judicata*. *See Int'l Air Response v. United States*, 302 F.3d 1363, 1368 (Fed. Cir. 2002) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

## III. CONCLUSION

For the reasons stated above, pursuant to RCFC 12(b)(1), the Court lacks subject-matter jurisdiction over plaintiff's claims of Due Process Clause violations and claims against the district court and Ninth Circuit; and plaintiff's allegations of a Takings Clause violation fail to state a claim upon which relief can be granted, under RCFC 12(b)(6). The government's motion to dismiss the case is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

_____
VICTOR J. WOLSKI
Judge